Thank you, Your Honor. Kenneth Carpenter appearing on behalf of Mr. George Roque. Mr. Roque challenges the decision of the Veterans Court based upon its interpretation of the provisions of 38 C.F.R. 4.16B. When it's cited to that regulation, following its conclusion that there was no evidence that his condition presents an exceptional or extraordinary impact on his employment, that is the legal standard under the VA regulation at 3.321B and is not the legal standard under 4.16B. The reason that this interpretation is important is that below, the VA conceded in its briefs that this matter needed to go back for consideration of the question of his inability to work due to his service-connected disability. The Veterans Court, in reviewing the briefs, decided that the error of failing to discuss that evidence of record that implicated that consideration was not necessary because there was no evidence that the condition presented such an exceptional or extraordinary impact on employment. The problem with that prejudicial analysis is that it uses the wrong legal standard. The correct legal standard under 4.16B is the criteria under which Mr. Roque did establish his entitlement to consideration under this Court's decision in Comer. He had presented the record before the agency and the VA below agreed, indicated that there was evidence of his unemployability while he was seeking a higher rating for his service-connected disability, thereby implicating his entitlement to an extra schedule or criteria. The VA regulations at 3.321B do not provide for a total rating. They do provide for consideration beyond that which is provided by the scheduler criteria. In some circumstances, 3.321B1 can provide for a total rating, but it uses an entirely different criteria for that determination and that was the criteria that was relied upon by the Veterans Court. Well, they mentioned it, but it's not clear that that was positive, is it? Well, Your Honor, the way that I read the Court's decision at J6, that was the explanation given for why there was no prejudice for the Board's failure to consider this evidence. But that prejudicial error analysis is incorrect because it used the wrong legal standard. The correct legal standard had to do with whether or not he was or was not able to secure or follow substantial gainful employment. They say, in short, the evidence of record does not indicate he is currently unemployed, let alone unable to secure or follow a substantially gainful occupation as a result of his service-connected need condition. There's nothing wrong with that, right? There's nothing wrong with that statement. Suppose they'd stopped the opinion right there. That would have been enough, right? That would be correct, Your Honor. So what you're saying is by adding this other sentence where they refer to an incorrect standard that they've somehow compromised what they said earlier. Well, because it does create a conflict as they were explaining the reason why they were rejecting the concession made by the VA in their brief that this matter needed to go back. This is a question of whether or not the Board should or should not have considered this evidence that was reasonably raised by the record of his inability to work, not whether or not he met that standard. And I think what the Court did was to confuse the – or that the Court below made the mistaken assumption that the Board had made a factual determination under 4.16b as it correctly described the legal criteria. And then it said in explaining why there was no prejudice that there was no evidence that his condition presented or presents an exceptional or extraordinary impact on employment. I'm sorry. Go ahead and finish your point. I'm trying to read this paragraph that we're focusing on, which starts on the bottom of page five of the Court's opinion. And I guess we're required to read it closely because of the nature of the issue on appeal. It seems to me that starting right at the beginning of the paragraph, the Court talks about the standard that I think everyone agrees is correct, right? They say there's no evidence of record that the appellant is – and here's the language. You're on page five. On page five at the bottom, right? The paragraph that begins, contrary to the appellant's contention. There's no evidence that the appellant is unable to secure or follow a substantially gainful occupation as a result of his service-connected knee condition. Correct standard, right? Yes. Right. And then a couple of sentences further discussing the evidence. And then the sentence that Judge Dike read. The evidence of record does not indicate that he is currently unemployed, let alone unable to secure or follow a substantially gainful occupation as a result of his service-connected knee condition. Again, correct statement of the standard, right? All right. And then the critical sentence and the critical language of that sentence would say, as the appellant's knee disability is currently rated at 10 percent, he would have to establish entitlement to TDIU on an extra-scheduled basis. Correct. And there is no evidence that his condition presents such an exceptional or extraordinary impact on employment. Why should we not read the reference to such an exceptional or extraordinary impact on employment as referring back to the inability to secure a substantially gainful occupation? Because of the cease reference to 4.16B. Well, but if the term such exceptional or extraordinary impact is designed to be a way of characterizing the correct standard that was set up, maybe it's a loose characterization, but nonetheless, if that was intended simply to say such standard, then citing 4.16B would be proper, right? I don't think so, Your Honor, because that particular phraseology comes out of a different regulation that not only sets a different legal standard, but does not provide the benefit that is in the header on page 5 for entitlement to TDIU. You do not get entitlement to TDIU, and that's an acronym for total disability based upon individual unemployability. That is available only under 4.16A if you meet the scheduler criteria, and if you don't meet the scheduler criteria under 4.16B. The criteria, the phraseology that is used there, and it is under those specific circumstances that the entitlement to extra-scheduler consideration under 3.321B1 is made available to a veteran. Suppose the veterans court had cited the correct regulation, 3.321B1, at the end of that sentence. Would we have a problem? No, I don't think so, Your Honor, because then the distinction that Judge Bryson is suggesting is reasonably inferred from the C site, because it's saying there is an alternative basis under this regulation. What you're really doing here is complaining that they miscited the regulation. They should have cited the other regulation. No, Your Honor. Frankly, what I'm complaining about is that they used an incorrect legal standard to decide the question of prejudice. The court below was confronted with briefing by the appellant and a response by the government that conceded that this matter needed to go back, that the evidence of record had reasonably raised the question of his inability to secure a follow. The court then makes factual findings that the board never made. Everything that you've talked about that describes the correct standard was not discussed or considered by the board, let alone the evidence that that conclusion was made by the veterans court in the first instance. The veterans court was exceeding its jurisdiction by going outside of its jurisdiction to make factual findings in the first instance in order to… I'm getting a lot into that one C site. No, Your Honor. It's the entire paragraph. This entire discussion is about rejecting the fact that the evidence below raised it. People must speak, Mr. Carpenter, when they're writing. I'm having a little trouble with the nature of this case. Okay. On page one of your brief. Oh, of the brief. Read that to me. Under A, nature of the case. Yes, Your Honor. I noticed that misprint there. I apologize to the court. Which one? There are several there. Yes, there are. I have no excuse for that, Your Honor. I have no idea why that got by my office. That was not the way in which it was prepared, but obviously there are relevant portions of that missing, and that's my… Well, maybe that's what the person who typed that reference would say, too. Well, except, Your Honor, that the difference is that in the case that was presented below, the government had agreed that Mr. Roquet was entitled to have his case reconsidered based upon their reading of the record below. That the board had not considered the matter for entitlement to individual unemployability. It was when it was submitted to chambers, and chambers rejected that based upon making a factual determination that was never made by the board in the first instance. Now, I did make a typographical, I omitted statements here, but that was not the same as the circumstances that were presented in this case. In this case, the government had agreed that this case should go back, and the court below prevented it from going back based upon an analysis of extra scheduler and factual determinations that ultimately relied upon the wrong legal standards. Now, you've characterized what the court did as making findings of fact. The court characterizes it as a harmless error analysis. And I guess harmless error, when you analyze whether error is harmless or not, you necessarily have to talk about the facts. Where did they cross the line, do you think, between a harmless error analysis and a fact-finding mission? Well, they described what the evidence was below as though that evidence had been discussed by the board. Well, but the whole point of the harmless error inquiry, I take it, is that we have a situation in which the board didn't discuss this evidence, but here's what the evidence was, and here's why it was harmless for the board not to have discussed it, right? Isn't that basically what they're saying? Well, I'm not sure that's correct, Your Honor, because it seems to me that what the court was doing was making a factual determination about what the evidence should have been found to have said below. Well, that would be a different argument. That might be a better argument than what you made. You haven't made that argument. Maybe what you should have done was to argue that the Court of Veterans Claims couldn't make a factual finding about whether the evidence showed this, and that that's what it did, and that the board had to make the factual finding, and that's why a remand should have been required. But that's not the argument you made. That's correct, Your Honor, but it does explain, in my view, what the difference is between the prejudicial error analysis and that that's what this was about. And I don't think there can be any dispute that that's what the court below was dealing with was exclusively a prejudicial error analysis, and whether or not that analysis was founded upon the correct interpretation of the pertinent regulation. I see I'm way into my reserve time. I'll reserve the time. Okay. Thank you, Mr. Carpenter. Why did the VA think this case should be remanded to the board? I think that, well, I would like to preface that, my response by saying, I think as you just pointed out, and I think Judge Walk may have been going with respect to paragraph referred to at the beginning of the brief, that's really not an issue that's been raised before the court as far as, well, the prejudicial error analysis. But I think the answer to your question, Judge Dyke, is that at least the attorney representing the VA agreed that there was an evidence of unemployment that was in the record. But as the Veterans Court correctly noted, that's not the standard under Comer and Roberson. The standard is that there has to be cogent evidence of unemployability. So the mere fact that the record might contain a document indicating that at one time or another an individual is unemployed doesn't necessarily trigger the Roberson-Comer requirement to consider TDIU. As this court said in Comer, there has to be cogent evidence of unemployability. And when you look at the entire record, as the Veterans Court did here, as part of its harmless error analysis, it demonstrated that this individual was unemployed for a period of time during the claim process. But that he was able to secure full-time student status. And at one time, the only reason he wasn't able to obtain full-time employment status was because he was seeking part-time status given his full-time student status. And then six months later, it's determined that he was able to secure part-time employment status. So that at the time that the Veterans Court is looking at this case, the record indicates that this individual is not only employable, but he's actually employed. So there could be no harm as a result of failure by the board to consider TDIU based on this record. And it's entirely appropriate for the Veterans Court to have conducted that analysis under its statutory requirement to consider the rule of prejudicial error. Well, I'm not so sure about that. I think if there's a fact issue that has to be resolved to determine whether it's prejudicial error, I'm not sure that's for the Veterans Court to make that factual determination. I think had this weight as opposed to the board. And I would agree, Your Honor, to the extent there was some conflict or some requirement to weigh evidence, as there may have been in Comer when this court sent the issue back, finding that based upon this court's review of the evidence, there was evidence of unemployability, which is what – cogent evidence of unemployability, which is what this court requires the Veterans Court to search for when determining whether the board erred in considering TDIU. But in this case, when the court below finds that there's absolutely no evidence, there's not a question of weighing the facts in any way, shape, or form. In this case, the Veterans Court was well within its responsibilities, as I think the statute implies, to consider the evidence to determine whether, in the context of what really is a reasons and basis error, as the court will note when it reviews the Veterans Court's decision. The Veterans Court's problem with the board in this case wasn't that it failed to – well, what it failed to do was to discuss the question of TDIU, given the suggestion in the record that he was at one point in time unemployed. But again, that's not the standard for determining whether TDIU is raised by the record. TDIU, as this court has indicated in Comer, is raised when there's cogent evidence of unemployability. And as part of a harmless error analysis, the Veterans Court has to be able to go through and at least determine whether there's cogent evidence. Now, I would agree with you, Judge Stike. At the time the Veterans Court makes the finding that, well, there is cogent evidence of unemployability, then whether or not TDIU actually exists is a matter for the board to make in the first instance, and there should be a remand. But when the Veterans Court, as part of its harmless error analysis, determines that there's no evidence of unemployability, at that point I think a remand is simply futile and overburdens the already burdened system for the VA. What do you say as to the argument that Mr. Carpenter presses as to the fact that the term exceptional or extraordinary is more or less at least taken from the general TDIU regulation rather than 4.16B? I think, okay, my first response to that, Your Honor, is, and I'll refer back to Mr. Carpenter's response to Judge Stike's opening question, if the court had stopped after the quoted portion that Judge Stike used on page JA6, the evidence of record does not indicate that he is currently unemployed, let alone unable to secure or follow a substantially gainful occupation as a result of the service-connected meeting condition, would it have been okay? And I think the answer was yes. So at that point I think anything that follows could be construed as dicta. And frankly, I think that actually is what happened here. What I believe the Veterans Court is doing is trying to, I guess, fully explain all the possibilities. And as the Court is aware, under 4.16 there is an A and there is a B. And under A, but the standards are the same. Evidence of total unemployability requires a statement here that he is currently unemployed, let alone unable to secure or follow a substantially gainful occupation. The only difference between A and B is that under A, if you meet a certain scheduler requirement, 60% for a single disability or 7% for a combination, the RO actually has the discretion to make the determination about TDIU in the first instance. But whereas in this case an individual only has a 10% disability rating, the RO is not in a position under the regulation to make that determination in the first instance. It must refer the matter to the Director of Compensation and Pension Programs and it's that office that has the authority to make the determination. But the analysis that's performed by the regional office is the same under A or B, and that is to determine whether the individual is incapable of substantial gainful occupation. So, frankly, the last sentence in this case, which simply distinguishes between the fact that this individual's actual analysis would take place under B as opposed to A, is really irrelevant. Well, you know, I think I misspoke when I asked you the question. I was trying to refer to 3.321B1 that Mr. Carpenter was referring to, and that's actually not TDIU. It's extra-schedule relief. Extra-schedule relief. And the language that finds its way into the court's opinion sounds like it comes at least kind of from that. It's not in that group again, but it's... I think we would all agree that it kind of does since a couple of those terms are used in there. I didn't mean to delay my answer. My first response was I think that's a non-issue, given that I think this really is dicta. But let's assume that it's not dicta and we're trying to construe to determine whether there was actually an interpretation made here. And I would respond, I think, with all due respect, as the court sort of did, and as we do in our briefs, that the juxtaposition of the use of the term such and I would actually add the citation to C, 4.16, demonstrates that what the veterans court is trying to do here is to refer to 4.16B. But in so doing, they inartfully added a couple of words that are more routinely seen as part of the 3.321B. That's not the best explanation. The board considered 3.321, and I think the best explanation, if I were you, would be to say that the veterans court intended to refer to that same section, but simply miscited 4.16B instead of the correct section. That's entirely possible. It's a typo, that's all. That's why I asked that question of Mr. Cartman. Typos are typos. Right. The bottom line here is for purposes of this court's review, the question presented to the veterans court really was whether the board failed to consider TDIU under 4.16. And I think that the answer to that is pretty clear that the veterans court determined that no, there is no cogent evidence of unemployability here so that to the extent there could even be an error on the part of the board in not discussing it, which would be an error under reasons and bases, that the record indicates that it would be harmless. And I would again submit that that is the kind of review under 7261B, prejudicial error that has to be allowable and within the purview. Again, Your Honor, I would agree. Where they find cogent evidence, the question of whether it adds up to TDIU, that's a different matter. But here, where there is a complete absence of cogent evidence under the Comer standard, I think it's well within the discretion of the veterans court at that point under 7261B to find a lack of prejudicial error. Any questions? Okay. Thank you, Mr. Hamilton. The government has conceded that the standards under A of 4.16 and B are the same and that the analysis is the same. And if that is correct, then the evidence of record of Mr. Roquet's unemployment and his part-time employment are cogent evidence because in A, the VA expressly defines unemployability as the inability to secure or follow and then describes secure or follow gainful occupation and then defines gainful occupation as not being more than marginal employment. And marginal employment is specified under the provisions of the VA's regulation as being able to earn more than the poverty level. If he was unemployed and he was only working part-time, then that is cogent evidence of unemployability under that standard because there is no evidence that this veteran was able to secure or follow gainful occupation, which resulted in him earning more than marginal employment. And it's only the question of whether or not it's reasonably raised. If it was reasonably raised, then under Comer, the board was obligated to have considered that evidence and may have in fact obtained a medical opinion as to whether or not it was his service-connected disability that prevented him from being able to be employed during the period in which he was unemployed and or was... The evidence seems to be that he couldn't work as a construction laborer. And having a need for disability would certainly be consistent with that, Your Honor. But then the question... That's the only evidence of somewhere where he can't work. He can do anything else. I'm sorry, Your Honor. There isn't any evidence to that effect. If there was evidence in the record that he could do something other than that, and part of the criteria is to look at what he is capable of doing, what his work history is, what his educational capacity are. Part of the criteria under 4.16b, when you make the referral to the Director of Compensation, is to give that employment history and that background to the Director of Compensation. He could walk one to three miles a day. He hadn't lost any time from work. He wasn't working, Your Honor. He was only working part-time. Yes, he was trying to go to school, but the evidence was that he was unemployed for a period of time and that he was only working part-time. The argument you're now making really sounds like an argument that would be equally applicable even if the offending sentence were not in the opinion, right? Because you're saying now that they shouldn't have made the harmless error determination. Would that regard to the standard that they did or didn't apply in that offending sentence? Well, it's the whole harmless error analysis, Your Honor, and I'm not sure that the court—I believe that Mr. Hockey is correct, that the court could have made a generic analysis, but the court didn't make a generic analysis. They made the type of evidentiary analysis that the board should have made in the first instance and said what the evidence did or did not say about employability. Well, I understand that argument, but that argument would be equally applicable whether that sentence that we've been focusing on were in the opinion or not, correct? But if it were phrased in less— We are trying to get a, quote, legal issue in front of us by the erroneous statement in the opinion and then saying that this issue about whether there's evidence of unemployability comes in under the harmless error now. I mean, Judge Bryson's right. It would be—in truth, this would be the same case if we had fact jurisdiction whether or not that— If you had fact—that would be correct, Your Honor. Yes, I'm sorry. If that's where you were trying to go, I didn't mean to be obtuse. No, no. We're on the same page. Unless there's further questions, Your Honor, I concede. Thank you, Mr. Graber. Thank both counsel. The case is submitted. That concludes our session for today.